Battle, J.
 

 Among- the rules which have been adopted by the courts, for the regulation of jury trials, none are of more importance than those which relate to the examination of witnesses.
 

 The object of these rules is to permit all the testimony, material and pertinent to the issue, to be fairly and fully brought out, and at the same time to prevent it from being perverted, misrepresented, or falsely colored. One of the most common of the preventive rules is that which prohibits the counsel of a party from putting leading questions to his own witness. A leading question is one which suggests to the witness the answer which the party desires ;, or, which is so put as to embody a material fact, and to-admit of an answer by a single negative, or affirmative; though neither the one, nor the other, is directly suggested. Such questions are prohibited, because the witness is supposed to be, and often is, favorable to the party -who calls him. 2 Phil, on Ev. 401. Under, certain peculiar circumstances, the rule may be relaxed, ot altogether abandoned, at the discretion of the presiding Judge; and from the exercise of his discretion there is, ordinarily, no right of appeal. But there are cases in which, if the party be deprived of the benefit of material testimony to which he is entitled, he may, complain of it as error, and have it reversed upon appeal. Such, we think, is the case now before us. The testimony was contained in a deposition
 
 *457
 
 —was pertinent to the issue,' and was very important to the party who offered it. "When the question, was objected to, on the trial, he could not get the benefit of an answer by varying it in such a way as to divest it of its objectionable character. The adverse decision of the Judge, therefore, deprived him of the benefit of the witness’s answer. If that decision were not in accordance with the established practice, he has manifestly been prejudiced by it, and ought to have redress. It becomes then necessary for us, to examine whether there-is any settled rule of practice in such cases, and if so, how it affects the present case.
 

 The general rule is admitted, and has already been stated, to wit, that, the counsel of a. party cannot put leading questions to his own witnesses. It has also been stated that, under certain circumstances, the rule may be departed from. .The departure from the rule, as well as the rule itself, is intended to secure a full and fair examination of the witnesses, so as to.extract from them all the testimony which they are capable of giving, free from bias, partiality, and false coloring. One of the circumstances, under which a departure from the general rule is allowable, is, when it becomes important to contradict a witness who has been examined by the opposite party. This may be illustrated by the case of
 
 Courteen
 
 v.
 
 Tallse,
 
 Camp. N. P. Rep. 43, in which one of the witnesses of the plaintiff, having been cross-examined as to the contents of a letter received by him from the plaintiff, (the letter having been lost,) and having mentioned -in his cross-examination some particular expressions as part of the contents, witnesses were called on the part of the defendant, to speak of the contents of the same letter, and Lord ElleNbo-Rougii allowed the defendant’s counsel' to ask one of the witnesses, who had first stated all he recollected of the letter, ■whether it contained the particular words and expressions as represented by the plaintiff’s witness. • Mr. Phillips, in commenting upon this case, says that “here, the object of cross-examining, was to ascertain a material fact in the case, by means of the plaintiff’s letter; and as the plaintiff’s witness
 
 *458
 
 bad stated wbat be conceived to be tbe language of tbe letter, and the defendant’s witness, on tbe other side, bad given bis account of its contents, it then became perfectly reasonable to allow tbe question, whether tbe letter contained particular expressions, as represented by tbe witnesses on tbe other side, or any to that effect.” Lord ElleNRORougu, bolding that “after exhausting the witness’ memory, (not however, by leading questions, but by examining him in the regular manner,) the witness might then be asked whether it contained a particular passage, recited to him, which had been sworn to on the other side, for otherwise it would be impossible ever to come to a direct contradiction.” See 2 Phil, on Ev. 406.
 

 Let us see how the rule, thus laid down, will apply to the present case: The main question, in issue between the parties was, whether the defendant had bought, or only hired the mule, for the value of which the suit was brought;
 
 James
 
 Oa/rrol, a witness for the plaintiff, had sworn that he had heard the defendant acknowledge, in the presence of one Thos. J. Ogle, that he had bought the mule of the plaintiff. The defendant then introduced the deposition of the said Thomas J. Ogle, who, to a question properly put, testified that he heard the contract between the parties, and that the defendant hired the mule of the plaintiff. The defendant after several other interrogatories, put one in the following form:
 
 “
 
 Did you hear me tell James Carrol that I had bought the mule
 
 %
 
 ” The interrogatory was objected to by the plaintiff’s counsel, and the Court refused to permit the answer to it to be read to the jury. It seems to us that the question, thus put, was, under the circumstances, a proper one, and that the answer to it ought to have been received. "We cannot distinguish it from that which was decided to be proper by Lord ElleNboeougii, and for which he gave so conclusive a reason — “ that otherwise it would be impossible ever to come to a direct contradiction. ” For the error in rejecting this testimony, the judgment must be reversed, and a
 
 venvre, de now
 
 awarded.
 

 Pee Oueiah. Judgment reversed.